**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WILLIAM L. GILL,

       Plaintiff,

                                      CASE NO. 04-70164

-vs-

                                      PAUL D. BORMAN
PONTIAC POLICE OFFICERS           UNITED STATES DISTRICT JUDGE
LOCRICCHIO (#304) and MAIN (#310),

       Defendants.
_____/

**OPINION AND ORDER:**
**(1) GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS IV AND V; AND**
**(2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNT II**

Before the Court are Defendants' Motion to Dismiss Counts IV and V, and Defendants' Motion for Summary Judgment on Count II. The Court held a motion hearing on March 29, 2006. Having read the pleadings, and for the reasons stated below, the Court:

    1.    GRANTS Defendants' Motion to Dismiss Counts IV and V; and

    2.    DENIES Defendants' Motion for Summary Judgment on Count II.

**I.    FACTS**

On August 8, 2003, around 3 a.m., William Gill ("Plaintiff") left work at Elam Brother's Restaurant and headed home. (Pl.'s Resp. 8). While driving home, Plaintiff noticed a friend, Rosalind Redman ("Redman"), standing on a corner and offered to drop her off at her residence. (*Id.*). According to Officers Daniel Main ("Main") and Mark Locricchio ("Locricchio") (collectively "Defendants"), while on patrol in their police cruiser, Plaintiff's vehicle was speeding in the northbound direction on Sanford Street. (Defs.' Br. 6). After making a u-turn,

Defendants caught up to Plaintiff's vehicle and followed Plaintiff as he turned onto Whittemore Street. (*Id.*). Defendants claim that while on Whittemore they activated their emergency lights to initiate a stop. (*Id.*). Plaintiff contends that he noticed the police cruiser behind him while on Whittemore, but the cruiser did not turn on its emergency lights until after Plaintiff turned onto Edith Street. (Pl.'s Resp. 8). Defendants pulled Plaintiff over on Edith Street. (*Id.*).

Defendants' cruiser was equipped with a video camera which recorded the entire traffic stop. (*Id.* at 11). Although Main's audio device was working properly at the time of arrest, he did not turn the device on to record the stop. (*Id.*).

After Plaintiff pulled over, Main approached Plaintiff on the driver side of the vehicle, while Locricchio approached Redman on the passenger side. (Pl.'s Resp. 11). Main requested that Plaintiff produce his driver's license. (*Id.*). Plaintiff responded that he did not have his driver's license with him. (*Id.*). Plaintiff did produce a Michigan State ID card. (*Id.*). Main asked Plaintiff to step out of the vehicle and turn around so that he could be searched. (Defs.' Br. 7). Plaintiff claims that when he stepped out of the vehicle, Locricchio slapped Redman and said "bitch, don't move." (Pl.'s Resp. 9). The video camera evidences that Officer Locricchio never touched Redman.

Officer Main then attempted to conduct a pat down search of Plaintiff, but felt that Plaintiff was uncooperative in allowing him to search Plaintiff's mid-section. (Defs.' Br. 7). As a result, Main pinned Plaintiff up against the vehicle and requested the assistance of Locricchio to restrain and search Plaintiff. (*Id.*). Plaintiff and Defendants struggled, and Plaintiff was taken to the ground in an attempt by Defendants to handcuff Plaintiff. (*Id.* at 9). Defendants claim that Plaintiff continued to ignore their verbal instructions to put his hands behind his back and

struggled with the officers. (*Id*.). Defendants' argue that this required them to use physical force and one spray each of mace on Plaintiff. (*Id*.). It is Plaintiff's position that he was cooperating with Defendants when Locricchio maced him. (Pl.'s Resp. 9). Plaintiff also claims that Defendants choked him, told him "[n]igger, shut up. You're going down tonight," and repeatedly beat him until they were tired. (*Id*.). Plaintiff also contends that he was unable to move once he was taken to the ground and did not resist, struggle, kick, or strike Defendants. (*Id*. at 10).

Once Plaintiff was handcuffed, Defendants laid him on his back and Locricchio conducted a search. (Defs.' Br. 8). Defendants discovered one baggie with seven packs of heroin and another bag containing crack cocaine. (*Id*.). Plaintiff was then taken to the Pontiac Police Department Headquarters, where he was formally placed under arrest, (*Id*.), and to Pontiac Osteopathic Hospital, (Pl.'s Resp. 11), though it is unclear where he was taken first. Medical records from Pontiac Osteopathic indicate that Plaintiff had a broken elbow, and contusions to his chest and elbow. (*Id*.). Plaintiff was also treated for injuries to his eyes as a result of the pepper spray. (*Id*.). Plaintiff additionally claims that he suffers memory loss, dizziness, depression, and nightmares due to the injuries he received from Defendants. (*Id*.).

Plaintiff was subsequently charged and convicted of two counts of possession with intent to deliver narcotic and as a habitual offender. (Defs.' Br. 8).

Plaintiff filed his five count Complaint on January 16, 2004.[1] Defendants filed the instant

---

[1]   Count I:     Ethnic Intimidation (MCL § 750.147(b))
      Count II:    Excessive Force (42 USC § 1983)
      Count III:   Assault and Battery
      Count IV:    Section 1983 Civil Rights Violations against Municipality
      Count V:     Spoliation and Destruction of Evidence

motions on March 25, 2005. Plaintiff filed his response on April 27, 2005 and Defendants replied twelve days later.

Defendants argue that Count IV of Plaintiff's Complaint, alleging Federal Civil Rights violations against the municipality, must be dismissed because the City of Pontiac and the Pontiac Police Department are not named defendants in this action. Defendants contend that Count V, alleging destruction of evidence, specifically, the non-existent audio recording, must also be dismissed because Michigan law does not recognize spoliation and destruction of evidence as a cause of action. Furthermore, Defendants aver that no audio recording was made during Plaintiff's arrest, so Plaintiff cannot argue that the recording was destroyed. Finally, Defendants assert that Main and Locricchio are entitled to qualified immunity, and therefore summary judgment must be granted on Count II.

Plaintiff concedes that he never filed an action against the City of Pontiac or the Pontiac Police Department, and agrees that Count IV should be dismissed. Plaintiff contends that the fact that spoliation has not been recognized in Michigan is no bar. Further, Plaintiff avers that, taking the evidence in the light most favorable to the non-moving party, Defendants are not entitled to qualified immunity because their actions were in violation of a clearly established law and Defendants actions were not objectively reasonable.

**III.   ANALYSIS**

    **A.   Motion to Dismiss Standard**

Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion alleges that a complaint has failed to state a claim

4

upon which relief can be granted. In evaluating such a motion, the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations in the complaint as true, and "should not [grant the motion] unless is appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). "However, the Court need not accept as true legal conclusions or unwarranted factual inferences." *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002).

The purpose of a 12(b)(6) motion is "to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). Accordingly, when reviewing a 12(b)(6) motion to dismiss, the court only examines whether the pleadings state a claim for which relief may be granted, and does not review additional evidence. *See Nieman v. NLO,* Inc., 108 F.3d 1546, 1554 (6th Cir. 1997). "As the First Circuit stated, '[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988) (quoting *O'Brien v. DiGrazia*, 544 F.2d 534, 546 n.3 (1st Cir. 1976)).

  **B.**   **Motion for Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting

affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment

    **C.**    **Discussion**

        **1.**    **Motion to Dismiss**

            **a.**    **Constitutional Violations against the Municipality (Count IV)**

Plaintiff concedes that he never filed an action against the City of Pontiac or the Pontiac Police Department and that they are not parties to this action. As the City of Pontiac and the Pontiac Police Department are not parties to this action, a claim cannot be brought against them in the instant case. Accordingly, the Court grants Defendants' Motion to Dismiss Count IV.

            **b.**    **Spoliation and Destruction of Evidence (Count V)**

Defendant argues that spoliation of evidence is not recognized in Michigan. Plaintiff responds that even though the tort of spoliation has not be recognized in Michigan, it is certainly no bar.

Spoliation is defined as "[t]he intentional destruction [or significant and meaningful alteration] of evidence[,] and when it is established, [a] fact finder may draw inferences that evidence destroyed was unfavorable to [the] party responsible for its spoliation." BLACK'S LAW

DICTIONARY 1401 (6th ed. 1979).  The tort of spoliation is not available in Michigan.  *Panich v. Iron Wood Products Corp.*, 179 Mich. App. 136 (1989); *Cavin v. GMC*, Case No. 190558, 1997 WL 33340259 (Mich. App. Nov. 4, 1997).  However, the court does have the option of sanctioning a party for spoliation.

> The Sixth Circuit has held that 'the rules that apply to the spoiling of evidence and the range of appropriate sanctions are defined by state law,' in this case, Michigan.  Under Michigan law, '[a] trial court has the authority, derived from its inherent powers, to sanction a party for failing to preserve evidence that it knows or should know is relevant before litigation is commenced.'  A sanction may be appropriate 'regardless of whether the evidence is lost as the result of a deliberate act or simple negligence, [as] the other party is unfairly prejudiced because it is unable to challenge or respond to the evidence . . . .'  The imposition of a sanction for spoliation of evidence is a matter within the discretion of the trial judge.

*Roskam Baking Co. v. Lanham Mach. Co.*, 87 F. Supp. 2d 758, 761 (W.D. Mich. 1999) (internal citations omitted).

In the instant case, it is unclear from Plaintiff's Complaint if Plaintiff is arguing that Main destroyed/altered the audio recording of Plaintiff's traffic stop.  Plaintiff's Complaint only states that the audio recording is critical and that the tape must be produced.  However, Plaintiff's responsive brief clarifies his spoliation count.  By claiming that Main was under a duty to activate the audio box and failed to do so, thereby impairing Plaintiff's ability to prove his claim.  (Pl.'s Resp. 25-26).  Neither Plaintiff's Complaint nor his responsive brief alleges that Main activated the audio box and then intentionally destroyed or lost the recording.  Because Plaintiff does not allege that an audio recording was made and then intentionally destroyed or lost, Plaintiff has not stated a claim upon which relief can be granted.

Even if Plaintiff did argue that Main destroyed, tampered with, or altered the recording, Plaintiff's claim would be barred because Michigan does not recognized spoliation as a cause of

8

action. Though spoliation cannot be a cause of action, the Court may sanction Main for failing to preserve evidence. The Court will not sanction Main for the alleged spoliation of the audio recording because there was no recording to destroy.

Accordingly, the Court grants Defendants' Motion to Dismiss Count V.

### 2. Motion for Summary Judgment

#### a. Qualified Immunity on Count II

Defendants argue that they are entitled to qualified immunity and therefore summary judgment should be granted in their favor on Count II. Defendants contend that they were entitled to use force to arrest plaintiff, given the fact that he was resisting arrest. Defendants assert that the level of force used was objectively reasonable to subdue Plaintiff, so that an arrest could be effectuated.

Plaintiff responds that he did not actively resist arrest, threaten, use profanity, punch, or kick the officers. Plaintiff argues that Defendant had no reason to use pepper spray on him once he was handcuffed. Plaintiff avers that he was not carrying a weapon and posed no threat to Defendants. Further, Plaintiff argues that the force used was excessive considering that this was a minor traffic violation.

The doctrine of qualified immunity affords "not a defense to liability," but, rather, "an immunity from suit altogether . . . to avoid [the] burdens of [the] costs of trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Qualified immunity shields those government officials performing discretionary functions from liability for civil damages, as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Feathers v. Aey*, 319 F.3d 843, 847 (6th Cir. 2003). The determination of

whether an officer is entitled to qualified immunity involves a three-step inquiry: (1) whether the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred; (2) whether the violation involved a clearly established constitutional right of which a reasonable person would have known; (3) whether the plaintiff has offered sufficient evidence to indicate that the officer's action was objectively unreasonable in light of the clearly established constitutional rights. *Id*. at 848.

Proper application of the reasonableness test is based on the facts and circumstances of each particular case. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Factors to consider when addressing reasonableness are: (1) the severity of the crime at issue; (2) the immediacy of the safety threat to officers or others; (3) whether the suspect actively resisted arrest. *Id*. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396 (citing *Johnson v. Glick*, 481 F. 2d 1028, 1033 (2nd Cir. 1973)). Under the Fourth Amendment, the right to make an arrest allows the officer to use some physical coercion to effect it. *Id*. (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Untalan v. City of Lorain*, 430 F.3d 312, 315 (6th Cir. 2005) (citing *Graham*, 490 U.S. at 396-97). "Reasonableness in an excessive force case is an objective inquiry where the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances of the situation, without

consideration of an officer's underlying intent or motivation." *Graham*, 490 U.S. at 397. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id*. "For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' 'Although it need not be the case that the very action in question has been previously held unlawful, . . . in the light of pre-existing law the unlawfulness must be apparent.'" *Feathers*, 319 F.3d at 848 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639, 640 (1987)).

Viewing the facts in the Plaintiff's favor, there is a genuine issue of material fact whether Plaintiff's Fourth Amendment rights were violated. The Court first notes that the Defendant officers had probable cause to arrest Plaintiff. The cruiser video shows that as Main searched Plaintiff, Plaintiff repeatedly brought his hands towards the front of his body and turned his body to face Main, preventing Main from completing a search incident to arrest. After Main's inability to complete his search of Plaintiff, Main felt it necessary to pin Plaintiff against Plaintiff's vehicle until Locricchio could assist him. Defendants then took Plaintiff to the ground. Once on the ground, the cruiser video shows Plaintiff squirming and kicking in what appears to be an effort to evade handcuffing. However, the video shows Main strike Plaintiff at two points in the officers' attempt to handcuff Plaintiff. With both Locricchio and Main on top of Plaintiff, Main initially struck Plaintiff twice when he was first brought to the ground. The video also shows Main strike Plaintiff three more times soon thereafter. The cruiser video does

not show Defendants using force on Plaintiff after he was handcuffed.[2]

Though the Court is aware of the initial resistance Plaintiff showed during his arrest, the Court finds that, taking the facts in the light most favorable to the non-moving party, a question of fact remains whether Defendants subsequent use of force, specifically the strikings, was 'objectively reasonable' in light of the facts and circumstances of the situation; specifically whether Defendants only used the force necessary to effectuate an arrest.  In a light most favorable to the Plaintiff, the Court cannot say that Defendants' actions were reasonable.  Therefore, the Court declines to grant Defendants qualified immunity on Count II.  Accordingly, the Court denies Defendants' Summary Judgment motion

## V.   CONCLUSION

For the reasons stated, the Court:

1. GRANTS Defendants' Motion to Dismiss Counts IV and V; and

2. DENIES Defendants' Motion for Summary Judgment on Count II.

**SO ORDERED**.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 30, 2006

CERTIFICATE OF SERVICE
Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 30, 2006.

S/Jonie Parker
Case Manager

---

[2] Plaintiff alleges that he was sprayed by mace after he was handcuffed.  (Pl.'s Resp. 19).  However, Plaintiff's deposition testimony states he was maced before he was handcuffed.  (Pl.'s Dep. 195: 19-20; 209: 7-13).